We'll move now to Appeal 22-1156, United States v. Kevin Hartleroad. And we're going to begin with argument from the appellant. Ms. Juliana, I'll recognize you first. May it please the Court. This case presents two issues. One, whether there is sufficient evidence to support Mr. Hartleroad's conviction for sexual exploitation. And two, whether Mr. Hartleroad is entitled to a new trial because the trial instructions broadened the basis for the criminal exposure from the indictment. Any dispute with the fact that we review on plain error? No, no dispute. Okay, thank you. And that's the issue I'd like to talk about today, the issue of the jury instruction. This is actually a very unique case in the Seventh Circuit. Based on my research, I did not find any other case where we're dealing with sexual exploitation based on a live visual depiction. And that brings up an issue of statutory interpretation. Under the sexual exploitation statute, the government must not only prove that the defendant in an attempt case acted with the intent to use, employ, persuade, coerce a child into sexual explicit conduct, but also that he did so with a certain purpose. And when we're dealing with a live visual depiction, like FaceTime or something of that nature, Skype here, there's two purposes in the statute. One, the purpose for producing a visual depiction, and two, the purpose of transmitting that live visual depiction. So Mr. Hartleroad was indicted for purposes of producing a live visual depiction. But the jury was instructed he could be convicted on either basis, purposes of producing or transmitting a live visual depiction. So let me ask you this question, since it's plain error review. The fourth element of plain error review, even if we think there's an error and we think it's obvious and all the rest of that stuff, is that we have to ask the question whether the integrity of the system would be affected by failing to correct the error. And I have two concerns about this. First of all, had somebody raised this concern to the district judge, never mind the judge said, oh, this isn't a big change. Counsel has an obligation to look at things. There's a hair's difference between the instruction that the court gave and the indictment, because the indictment itself, and I'm looking at it, says, for the purpose of producing a visual depiction of this long list of conduct, knowing and having reason to know that the depiction would be transported and transmitted. So the idea of transmission is in there in the indictment. Not quite in the same purpose language, but would it really be the kind of thing that requires correction when it would have been so easy for the judge to change the way the transmission concept was in the instruction? I'm just trying to say, on plain error review, we don't correct every error. Some errors are—they're errors, for sure. Maybe there is an error here, but is it so fundamental that it requires the remedy you're talking about? And the answer to that is yes. I do believe it's more than just benign surplusage, and it does go to a very fundamental right, the Fifth Amendment, the right to— I understand that, but the purpose of transmitting the live visual depiction versus knowing and having reason to know that it would be transported and transmitted, that's the distinction we're looking at. Well, to me, there still is a problem, because there is a reasonable probability that the outcome could have been different, and this is why. It is easier to prove that Harderode acted with the purpose of transmitting. He arranged, wanted to get on Skype. Let's put aside the sufficiency argument for a second. And because he wanted to get on Skype, he wanted to get on Skype to watch what was going to happen. That is transmitting. But producing is different. Producing is going that step further of actually being involved in the making of it. I appreciate you raising that argument. Are those material differences on this fact pattern, though? Because he had to have known in no small part by sending that script that there would be the production of the visual images on the conduct side of it, and then they would be transmitted via Skype, and he would watch, he would observe. And that was my next point, that, yes, there's obviously sufficient evidence that he acted with the purpose of producing, but that's different than is there a reasonable possibility the jury could have found otherwise. And so let me explain. That script was written only when the officer requested him to do so, right? The officer said, this is what me and my daughter like. Please write it out. Although this court would say that that's sufficient evidence, a jury could reject that. They could reject that that was for the purposes of producing. They could find that that script was for the purposes of him watching and just giving the officer what he wants. You know, that was really the defense argument at trial, right? That this was all the officer telling him what to do and Harderode doing it. And I know that that might not affect a sufficiency analysis, but it could affect a jury. A jury could have a line saying, hey, there's a line when Harderode's not coming up with these ideas on his own, and the officer is. And I don't think he was acting for the purposes of producing. He was just acting to give the officer what he wanted so he could watch this visual depiction. Doesn't he, though, initiate the contact for the second Skype? For the second Skype? You mean after the Skype that failed? Yes. He says, oh, would love to do Skype with the two of you and direct. That's initiated by Mr. Harderode, correct? If I'm understanding you right, Judge Bredin, the second time that they meet up, I don't remember who brought up Skype the first time. I would have to go back and look at the record. But ultimately, it was discussed again. And then Mr. Harderode stopped talking, right? He did say things again, right? Lots of talk, lots of bad talk from my client. But he stopped. He never made any effort to do a second Skype. He stopped talking to the police officer. So, you know, I mean, it cuts both ways, that second encounter with each other. One, he's still talking and saying, hey, I left because I was scared. But on the other hand, actions speak louder than words. And he had an opportunity to go back and do it again, and he stopped. So I do think that there is a difference here that a jury could have seized on had it been properly instructed. And I see where you're coming from, Judge Wood. But this made it easier for the government to prove. It's easier to prove transmission than it is to prove production. And you're right, it's already in the statute that he has to know about transmitting. But they took out, because they put an or in there, the burden of proving he was acting with the purpose of producing. Yeah, I guess my concern about that part of it, similarly to what Judge Scudder said, is by the time he writes out the script and everything, I don't care who asks him to do it, he does do it. And I think of movies or anything, you know, producing a video of something, a visual depiction, that's a major step toward producing. I'm not sure this is the case where the facts present such a difference between producing and transmitting. You could get a video from somebody else that you didn't produce, and then you could act with the purpose of transmitting it, and maybe that would fall under the instruction that was given. But that's not what happens here. Well, I do believe, and I'm coming into my rebuttal time, but I'll quickly say that's okay. I believe that there are two reasonable interpretations. That you could argue to a jury that there's another purpose, and that's the purpose just to give the officer what he wants, so you can get to that Skype. And in a case where we're dealing with the Fifth Amendment, and if there's a reasonable probability he was convicted on something, he wasn't charged, that matters. So thank you very much. I'll reserve the rest of my time for rebuttal. That will be reserved. Thank you. We'll now move for argument from the appellee, Mr. Temkin. Good morning, and may it please the Court. Eli Temkin for the United States, the appellee in this case. This Court should affirm Mr. Hartle-Rhodes' conviction. I'll start with the jury instruction issue. I'd be happy to answer any questions about the sufficiency of the evidence. As to the jury instructions, this was a production case through and through. From start to finish, this was a production case. And this Court is reviewing only for plain error. On plain error review, the question, as this Court set out in the Withers case, is whether there's a reasonable probability that the jury would have reached a different outcome, if not for this transmitting language in the jury instruction. So it's interesting, though, because it's for the purpose of, and one could say, especially this is kind of a weird post-COVID, you know, we can't get directly in touch with each other situation. Why couldn't the jury have found that this was all for the purpose of the transmission? He doesn't really care how it gets created. He wants the transmission. And that would be, that would take us into the problematic zone here. Your Honor, the jury found him guilty as charged. Based on this unfortunate instruction. Correct. And on these facts, there's no reasonable probability that the jury found him guilty of transmitting, but didn't also reach the findings for him to be guilty of producing as well. Explain more why they blend together in your mind. Yes, Your Honor. Under the statute, producing is, well, I'll back up. I'll address that both legally and factually as applied here. So legally, there's a lot of overlap between producing a visual depiction and transmitting a live visual depiction. But you're not arguing, are you, that this instruction was actually a correct reflection of the indictment? It doesn't look like it is. No, Your Honor. Just on the face, they are different. But there's only a very, very narrow sliver of hypotheticals that possibly could fall into the transmitting a live visual depiction realm that do not also fall into the producing a visual depiction realm. So under 2256, the definitional statute, producing is defined to include six things, including producing, distributing, issuing, manufacturing. So producing has an extremely broad definition. Visual depiction, also under 2256, has an extremely broad definition that includes a live visual depiction. So producing is broad. Visual depiction is broad. As applied to this case, Mr. Hartle-Rode put together, tried to put together, a live sex show featuring a minor that he would get to watch over Skype. He scripted it out. He built the relationships to make it happen. And he told the stepfather exactly what Mr. Hartle-Rode wanted to see the stepfather and the stepdaughter do. He scripted out the sexual positions, the camera angles. He did everything that you would do to direct. And that all falls squarely within producing. Okay, thank you. Again, Your Honors, the standard here is whether there's at least a reasonable probability the jury would have found Mr. Hartle-Rode guilty, or excuse me, would have reached a different outcome if not for this language in the jury instruction. On these facts, there just isn't, based on how broad the statutory definitions are. But you agree it's quite possible to transmit something that you didn't produce. People do it all the time in this space. So in lay terms, yes. Under the statute, there's probably some sliver of something that counts as transmitting but not producing. You can imagine, say, sorry to spin out a hypothetical here, but maybe a defendant stumbled upon a live visual depiction online and rebroadcast it. That potentially could qualify as transmitting the live visual depiction but not producing it. So there could be some sliver of something. But on the facts of this case, again, this was all about producing, putting together this live sex show, scripting it out, and doing everything he could to make it happen. I'd be happy to answer any other questions. No, thank you, Mr. Temkin. Thank you, Your Honors. This court should affirm Mr. Hartle-Rode's conviction. Thank you. Ms. Giuliano, we'll move to you for rebuttal. May it please the court. A video of a live visual depiction is now a visual depiction, right? I mean, that's just what we've always been dealt with, right? A video of child porn is what's always been. We're in a new realm here. A live visual depiction recorded is then no longer a live visual depiction, right? And a live visual depiction is something different. And the legislature used words to differentiate between transmitting and producing. So they have to mean something. And I understand in our mind when we look at this, with all due respect, nasty script that he wrote, we think, of course it's producing. But there is an argument out there that it's all done to please the officer. I mean, it doesn't justify what he did, but it's part of the context. The officer is the first one to suggest Skype. The officer is the first one to send a photo that's sexual. The officer is the first one to ask Mr. Hartle-Rode to send a photo. That sounds like an entrapment argument to me. Well, maybe it should have been, but it wasn't. But the argument of the difference between producing and transmitting is also there. And so we would ask that this court order Mr. Hartle-Rode a new trial where he can be tried on the wording of the indictment if this court so chooses to affirm on sufficiency. Thank you very much. Thank you, Ms. Juliana. Thank you, Mr. Temkin. The case will be taken under advisement.